**James ELLISON, Plaintiff–Appellant,**

v.

**FORD MOTOR COMPANY; Woodhaven Stamping Plant; and Frank Doyle, Defendants–Appellees.**

No. 86–1412.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 17, 1987.

Decided May 24, 1988.

Ronald Reosti (argued), Ronald Reosti & Associates, P.C., Detroit, Mich., for plaintiff-appellant.

Jill MacDonald, Willie E. McGlory (argued), Ford Motor Co., Dearborn, Mich., Renate Klass, Miller, Cohen, Martens and

Sugarman, P.C., Southfield, Mich., for defendants-appellees.

Before JONES, WELLFORD and BOGGS, Circuit Judges.

PER CURIAM.

Plaintiff appeals the district court's decision granting summary judgment for defendants in this employment discrimination action. Because we believe the district court abused its discretion in ruling on defendants' summary judgment motion without first addressing a motion to amend that had been filed by plaintiff's newly-appointed counsel, we reverse and remand for further proceedings.

I.

Plaintiff, James Ellison, Jr., a black man, was first employed by defendant Ford Motor Company at Ford's Woodhaven Stamping Plant in September of 1970. From 1970 to 1975, Ellison accumulated an extensive disciplinary record for tardiness, absenteeism and failure to properly carry out instructions. In November 1975, Ellison was discharged for absenteeism. While that discharge was being grieved, Ellison and another Ford employee were discharged on December 3, 1975 for assaulting Ford employee, Jesse Gregory, who was then president of UAW Local 387, the union to which Ellison belonged. Pursuant to the grievance process, Ellison was reinstated to work effective December 9, 1976.

During the next two years, Ford disciplined Ellison at least seven times for tardiness and loafing. On October 26, 1978, Ellison was discharged for chronic tardiness. Ellison was again reinstated, however, this time the collective bargaining agreement between Ford and Local 387 required that Ellison sign a Reinstatement Waiver. The waiver, which Ellison signed on November 28, 1978, provided that Ellison was to be on probation for a 12-month period of time, and that if he were disciplined during that time, he could not contest the reasonableness of the penalty. If disciplined, he could only grieve on the basis of whether he was innocent or not.

The record shows that between December 1978 and August 9, 1979, Ellison's attendance continued to be less than satisfactory. In his affidavit filed in this case, Rene Sopher, Supervisor of Labor Relations at the Woodhaven plant, indicated that Ellison had 35 incidents of tardiness during the first eight months of 1979 and had been absent from work without leave for an additional 35 days during this same time period. The time sheets substantiate Ellison's attendance problems during these months.

Evidently on August 8, 1979, Ellison was tardy and was warned that any future tardiness would result in his discharge. On the very next day, August 9, 1979, Ellison was again tardy and, as a result, was discharged. After Ellison was notified of his discharge he apparently assaulted his supervisor, Joe Balk, who Ellison says was laughing at him. Following an investigation into the alleged assault, Ellison was sent a registered letter notifying him that another discharge was being entered on his record for "assault on a member of supervision."

On August 21, 1979, Ellison filed two EEOC charges—one against Ford and the other against the UAW—alleging that he had been discriminated against on the basis of his race. On January 31, 1980, the EEOC issued a Determination finding no reasonable cause to believe that Ford had discriminated, and issued Ellison a Notice of Right to Sue. Ellison apparently never received the right to sue letter, although Ford and the UAW both did. In any event, after Ellison notified the EEOC in September 1982 that he had not received the notice, a new one was issued to him.

The original complaint in this lawsuit was filed on August 7, 1982 in the Wayne County (Michigan) Circuit Court. Ellison proceeded *in propria persona.* Named as defendants were Ford; Frank Doyle, a Ford employee; Local 387 of the UAW; and Jesse Gregory, the president of the Local. Ellison alleged a cause of action under the Elliott–Larsen Civil Rights Act, Mich.Comp.Laws Ann. § 37.2701(a) (West 1985), in that he was discriminated against

on the basis of his race. He also claimed that he was discharged in violation of the collective bargaining agreement existing between Ford and the UAW.

Defendants removed the case to federal court on the basis of the federal court's original jurisdiction over the breach of contract claims under the provisions of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982) (LMRA). As a result of the removal, Ellison filed an amended complaint *in pro per* in December 1982. Ellison named the same defendants as in the original complaint, but omitted any mention of the Elliott–Larsen Act. Instead, he asserted a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

Still proceeding *in pro per*, Ellison filed another amended complaint on November 17, 1983. This time he asserted a violation of Title VII and breach of contract against Ford and Frank Doyle under Section 301 of the LMRA. Ellison claimed that he had been treated differently than his white co-workers with respect to disciplinary actions taken against him.

On March 20, 1984, Judge George Woods set a schedule establishing a discovery cut-off date of June 16, 1984. Between March and June, Ellison's deposition was taken by defendants. Ellison, acting without counsel, conducted no discovery during this three-month period. When Ellison did attempt to obtain discoverable materials in November 1984, defendants objected to the request as untimely under the court's scheduling order. Defendants also objected to each of Ellison's requests as overbroad and burdensome. Ellison did not file a motion to adjudicate the propriety of defendants' objections to his discovery requests, and so he obtained no discovery throughout the pendency of the case.

In May 1985, counsel was appointed for Ellison by Magistrate Paul Komives. About one month later, the attorney assigned by Komives moved to withdraw from the case and his request was granted on July 25, 1985. While this motion was pending, defendants filed motions for summary judgment. Over the next several months, defendants' motions were scheduled for oral argument on several occasions. In the meantime, two different attorneys were appointed to represent Ellison, both of whom later withdrew from the case. It is not clear from the record why any of these attorneys withdrew.

Finally, on December 23, 1985, Ellison's present counsel, Ronald Reosti, was appointed. After entering the case, Ellison's new counsel stipulated to a dismissal of all claims against the Union defendants—UAW and Gregory—and to a dismissal of the breach of collective bargaining agreement claim against Ford. At this same time, Ellison's counsel requested the court to allow him to file a motion to remand the case to state court. Judge Woods granted counsel's request and directed that the motion should be filed by March 3, 1986. Also at that time the court scheduled the hearing on defendants' summary judgment motion for March 24, 1986.

Ellison's counsel filed his motion to remand as scheduled on March 3, 1986.[1] In the motion, counsel indicated that the cause of action based upon a breach of the collective bargaining agreement had been dismissed, and that, accordingly, plaintiff was only pursuing the claim that his discharge and harassment were racially motivated. Counsel suggested that fairness dictated plaintiff be allowed to amend his complaint to make it clear that he did not intend to abandon his claim for violation of the Elliott–Larsen Act. Counsel further requested that if the prayer to amend were granted, he should be allowed to dismiss the Title VII cause of action and the court should order the case remanded to the Wayne County Circuit Court. In the event the court denied the request to remand, counsel requested that he be given leave to further amend the complaint to allege a violation of 42 U.S.C. § 1981 and to request a jury trial. In addition, counsel requested the court to re-open the discovery period.

---

1. The motion was styled "Motion to Amend Complaint; Remand Action to State Court and, in the Alternative, to Re-open Discovery." J. App. at 75.

The hearing on defendants' summary judgment motion was held, as scheduled, on March 24, 1986. On that date, Judge Woods granted defendants' motion and dismissed the complaint. The court indicated in its oral disposition that Ellison could not establish a *prima facie* case of racial discrimination and, even if he could, he had not offered evidence to show that Ford's legitimate, non-discriminatory reason for his discharge was pretextual. The court indicated at the beginning of the hearing that plaintiff's motion to amend/remand/or re-open discovery was pending before it. However, the court did not address the merits of that motion during the course of the hearing.

## II.

On appeal, we address only the narrow issue of whether the lower court abused its discretion in granting summary judgment for the defendants without first considering and ruling on plaintiff's pending motion to amend the complaint. As will be discussed below, we believe that the district court should specifically address plaintiff's pending motion.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party desiring to amend his pleading after a responsive pleading has been served may do so "only by leave of court ... and leave shall be freely given when justice so requires." The Rules put forth a liberal policy of permitting amendments in order to ensure determination of claims on their merits. *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir.1982). A court's refusal to grant leave to amend is reviewable under the "abuse of discretion" standard. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–32, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971); *Tefft,* 689 F.2d at 637–38. An abuse of discretion occurs when a district court fails to state the basis for its denial of a motion or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent. *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir. 1986). As the Supreme Court stated in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962):

[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Consistent with these principles, we recently held that it was an abuse of discretion for a district court to dismiss a suit on the basis of the original complaint without first considering and ruling on a pending motion to amend. *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir.1987). In *Marks,* we stated:

Given the policy of liberality behind Rule 15(a), it is apparent that when a motion to amend is not even considered, much less not granted, an abuse of discretion has occurred. The court in *Espey* [*v. Wainwright,* 734 F.2d 748 (11th Cir. 1984) ] determined that unless the district court's reasons for dismissing the motions to amend were "readily apparent" the dismissal could not be sustained. 734 F.2d at 750. *Because the district court did not consider the motion, we can discern no such "readily apparent" reasons here....*

. . . .

Therefore, we hold that dismissal of the suit based upon the original complaint without first considering the motion to amend was an abuse of discretion. The district court should have evaluated Marks' motion in light of Fed.R.Civ.P. 15(a) and its liberal policy of amendment.

*Marks,* 830 F.2d at 69–70 (footnote omitted & emphasis added).

At the time the district court granted summary judgment for Ford and dismissed Ellison's complaint, there was pending before the court a motion filed by Ellison's newly-appointed counsel seeking, among other things, leave to amend the complaint. Although the court had expressly granted Ellison's new counsel permission to file this motion, the district court never directly addressed the motion. Instead, the court granted summary judgment for Ford without indicating whether plaintiff's motion was even considered. The district court's

failure to consider and rule on plaintiff's pending motion to amend the complaint was an abuse of discretion. This is not to say that the court was required to grant plaintiff's motion. Rather, as in *Marks*, we believe the district court should evaluate the pending motion in light of the amendment policy embodied in the Federal Rules and should provide a reasoned explanation for its action.

While we recognize that *Marks* involved the admittedly more compelling situation where the plaintiff sought to amend the *original* complaint by adding entirely new claims, we believe the district court should nevertheless consider the rationale expressed in *Marks*, decided after its judgment was made in the instant case. We commend the district court for its willingness to go to great lengths to find an attorney to represent Ellison, as is demonstrated by the fact that the court made three different appointments before it found an attorney to remain with the representation of the case. However, if, as here, appointed counsel felt that certain amendments to the complaint were necessary, the court should have considered and ruled on those requested amendments.

Accordingly, we VACATE the judgment of the district court and REMAND for consideration of the motion to amend for the reasons stated.