RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0387p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GEORGE NAFZIGER et al.,

        *Plaintiffs-Appellants*,

    *v.*

No. 05-4181

MCDERMOTT INTERNATIONAL, INC. et al.,

        *Defendants-Appellees*.

———————————

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 04-00305—Thomas M. Rose, District Judge.

Argued: September 18, 2006

Decided and Filed: October 20, 2006

Before: GUY, GILMAN, and ROGERS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** John J. Scaccia, LAW OFFICE OF JOHN J. SCACCIA, Dayton, Ohio, for Appellant. Suzanne K. Richards, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee. **ON BRIEF:** John J. Scaccia, LAW OFFICE OF JOHN J. SCACCIA, Dayton, Ohio, for Appellant. Suzanne K. Richards, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge. Twenty-eight former employees of BWX Technologies (BWXT) and BWXT of Ohio (BWXTO) brought suit against their employers and related corporations, alleging various contract- and discrimination-related causes of action. In response to two motions to dismiss brought by the defendants, the district court held that (1) the plaintiffs' pleadings had failed to identify, in violation of Rule 8 of the Federal Rules of Civil Procedure, which individual plaintiffs were asserting various causes of action against which individual defendants, (2) the court lacked personal jurisdiction over five of the defendants, and (3) the plaintiffs, without good cause, had failed to serve process on one defendant, thus requiring dismissal of all claims against it under Rule 12(b)(5) of the Federal Rules of Civil Procedure. Subsequent to these dismissals, the district court denied the plaintiffs' motion for leave to file their amended complaint out of time, citing the standard for "excusable neglect" and finding that the standard had not been met. The plaintiffs appeal both this denial and the various pretrial dismissals enumerated above. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1

# I. BACKGROUND

## A.    Factual background

All of the plaintiffs worked for either BWXT or BWXTO between September of 1997 and the date of the events giving rise to this lawsuit. Earlier in 1997, the U.S. Department of Energy had awarded these two companies a general contract for the cleanup of the now-defunct federal superfund site at the Mound Facility in Miamisburg, Ohio. The site, originally constructed during World War II to assist the federal government in implementing the Manhattan Project and nuclear-weapons programs more generally, continued to operate as a manufacturer and worldwide distributor of stable isotopes until the end of the Cold War. When BWXT and BWXTO took over the Mound Facility, they immediately modified several of the contract-based employee-benefits packages, especially those relating to insurance. BWXT and BWXTO also effected several large-scale layoffs of Mound Facility employees, including an Involuntary Separation Plan (ISP) in mid-2001 that directly affected all but one of the plaintiffs.

Both BWXT and BWXTO are subsidiaries of the remaining two defendants, McDermott International, Inc. (MII) and McDermott Incorporated (MI). BWXT and BWXTO are Delaware corporations with their principal places of business and headquarters in Lynchburg, Virginia. MII is a Panamanian corporation with both its principal place of business and corporate headquarters in New Orleans, Louisiana, and is the overall parent corporation of the three other defendants in this case. MI, a Delaware corporation, is the immediate subsidiary of MII and the direct parent corporation of BWXT and BWXTO.

## B.    Procedural background

The plaintiffs filed their initial complaint on May 22, 2003. A little more than one month later, but before the date on which the defendants' answer was due, the plaintiffs timely filed an amended complaint (hereinafter referred to simply as the "Complaint").

In their Complaint, the plaintiffs alleged three separate "groups" of violations, each having occurred respectively before, during, and after the June 26, 2001 ISP implemented by BWXT and BWXTO as part of a larger reduction in force at the Mound Facility. The alleged violations were all "in the nature of contract/estoppel, discrimination, retaliation, and tort." Many were either "collective to all . . . Plaintiffs" or "specific subgroups" thereof, or, alternatively, "individual in nature." At the end of their Complaint, the plaintiffs listed 24 separate causes of action, each based in part on the violations set forth earlier. In only nine, however, did the Complaint specify which individual plaintiffs were bringing the respective causes of action.

### 1.    *Defendants' August 7, 2003 Motion to Dismiss*

MII, MI, and BWXT filed a motion to dismiss the plaintiffs' Complaint on August 7, 2003. All three defendants alleged, among other things, (1) that the plaintiffs' pleadings violated Rules 8 and 9(b) of the Federal Rules of Civil Procedure, and (2) that 21 of the 24 causes of action pleaded by the plaintiffs failed, per Rule 12(b)(6) of the Federal Rules of Civil Procedure, to state a claim upon which relief could be granted. MII and MI also alleged (3) that the district court, per Rule 12(b)(2) of the Federal Rules of Civil Procedure, lacked personal jurisdiction over them.

The plaintiffs' response to the motion came in three installments, one for each of the grounds enumerated above, and only after having requested and been granted no fewer than four consecutive three-week extensions by the district court. In granting the last of those extensions on November 12, 2003, with a revised due date of November 16, 2003, the district court cautioned the plaintiffs,

in uppercase type, that "NO FURTHER EXTENSIONS WILL BE PERMITTED." The plaintiffs nonetheless filed the first of their responses on November 17, 2003, one day after the final deadline had expired. On the same day, the plaintiffs requested two additional extensions for the remaining installments of their response. The district court, true to its word, did not grant either extension at that time. Undeterred, the plaintiffs filed—now without leave of court—the final two installments of their response on November 18 and November 24, 2003, respectively. After a telephonic hearing held on November 24, 2003, the district court retroactively accepted the plaintiffs' late responses *nunc pro tunc*.

### 2.        *Defendants' February 20, 2004 Motion to Dismiss*

BWXTO and individual defendants Peyton Baker, Robert Bergin, and Rich Higgins, all officers and/or supervisors of the defendant companies, filed a motion to dismiss the plaintiffs' case against them on February 20, 2004. As in the August 7, 2003 motion to dismiss, all four defendants alleged, among other things, various Rule 8 pleading violations as well as the plaintiffs' failure to state a claim upon which relief could be granted. BWXTO also moved for dismissal, pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, for insufficient service of process. (Only BWXTO, together with MII, MI, and BWXT, remain in the case as defendants-appellees at this stage in the proceedings.)

Yet again, the plaintiffs' response came in multiple installments and in violation of the court-imposed deadlines. The four responsive memoranda ultimately filed on April 1, 2, 5, and 19, 2004, respectively, were each out of time and without leave of court. Although the plaintiffs had requested another extension two days before the initial deadline of March 13, 2004, the district court refused to honor the request.

### 3.        *Plaintiffs' April 9, 2004 Motion to Amend Complaint*

On April 9, 2004, in the midst of filing the above-enumerated responses to the February 20, 2004 motion to dismiss, the plaintiffs moved to amend their Complaint to add another cause of action to the 24 already listed. The plaintiffs, after receiving an opposing memorandum filed by the defendants, filed a motion to request yet another extension on the very day that the plaintiffs' reply was due. True to its initial warning, the district court struck the motion, explaining that the motion not only lacked an accompanying memorandum of law as required by the court's local rule, but also gave no reason whatsoever for the requested extension. The district court added a brief admonishment to the plaintiffs' counsel:

> Plaintiffs' counsel has previously advised the Court that he will mend his ways and discontinue his frequent requests for extensions of time within which to plead. He has not done so.

> This Court is entrusted with the responsibility "to secure the just, speedy, and inexpensive determination of every action," Federal Rule of Procedure 1. The granting of Plaintiffs' motion would not accomplish this.

### 4.        *District Court's October 5, 2004 Order regarding the defendants' motions to dismiss*

After an August 20, 2004 transfer of venue from the Cincinnati Division to the Dayton Division, the district court handed down its order disposing of the defendants' two motions to dismiss on October 5, 2004. The district court first dismissed, with prejudice, MII and MI for lack of personal jurisdiction. In addition, the district court dismissed BWXTO for insufficient service of process, pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Finally, pursuant to Rules 8(a)(2) and 8(e)(1), the district court dismissed BWXT because of the plaintiffs' failure "to

identify [in their Complaint] which of the named Plaintiffs is bringing several of the Causes of Action." These last two dismissals were presumably with prejudice as well, because the district court did not specify that they were without prejudice. *See* FED. R. CIV. P. 41(b) ("Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule . . . operates as an adjudication upon the merits.").

At the end of its order, however, the district court explicitly granted the plaintiffs 30 days to amend their Complaint to comply with the pleading requirements of Rule 8. The court also provided the following guideposts for compliance:

> If an amended complaint is submitted, the Defendants must be able to identify the cause of action, specifically which Plaintiffs are bringing the cause of action, specifically which Defendants the cause of action is against and specifically the grounds upon which the cause of action is based.

### 5.        Plaintiffs' January 5, 2005 motion to accept their amended complaint out of time, and the district court's subsequent August 3, 2005 Order

The 30-day grace period granted by the district court on October 5, 2004 came and went without the submission of an amended complaint from the plaintiffs. They instead reverted to their old ways, requesting, and this time receiving, yet another extension. On November 4, 2004, the date on which the grace period was to expire, the district court granted the plaintiffs an unopposed extension until November 24, 2004.

Even this self-specified deadline, however, came and went without the submission of the plaintiffs' amended complaint. The pleading was not filed until November 26, 2004, two days late. Three days later, the district court struck the plaintiffs' amended complaint.

Finally, on January 5, 2005, more than five weeks after the district court's action, the plaintiffs formally moved the court for leave to file out of time or, alternatively, to accept their amended complaint *nunc pro tunc*. After extensive briefing by the parties, replete with multiple replies and sur-replies, the district court overruled the plaintiffs' motion and thereby terminated the litigation on August 3, 2005. This timely appeal followed, challenging both the October 5, 2004 Order granting the defendants' motions to dismiss and the August 3, 2005 Order denying the plaintiffs' motion to file an amended complaint out of time.

## II. ANALYSIS

### A.        Dismissal of all defendants for plaintiffs' noncompliance with Rule 8

#### 1.        Standard of review

The district court determined that the plaintiffs' Complaint failed to comply with Rules 8(a)(2) and 8(e)(1) of the Federal Rules of Civil Procedure in that it did not put the defendants on notice as to which particular plaintiffs were asserting certain of the alleged causes of action. On that ground alone, the district court dismissed the plaintiffs' Complaint in its entirety. The court, however, gave the plaintiffs 30 days to cure the noted deficiency. We review such a dismissal under the abuse-of-discretion standard. *Janita Theresa Corp. v. U.S. Attorney*, No. 96-1706, 1997 WL 211247, at *1 (6th Cir. Apr. 28, 1997) (unpublished); *Blake v. De Vilbiss Co.*, 118 F.2d 346 (6th Cir. 1941).

### 2.     *Discussion*

In their brief, the plaintiffs set forth in considerable detail several justifications for the length, complexity, wording, and overall organization of their Complaint, arguing that it was "as reasonably articulate and concise as Plaintiffs could get under the complex circumstances and facts of the case." These justifications, however, do not address the basis for the district court's decision. As the defendants note in their brief, the district court explicitly limited its finding of Rule 8 error to the single fact that "the specific Plaintiffs that [a]re bringing certain claims cannot be determined." Elsewhere in its order, moreover, the district court considered both length and complexity as nonissues, noting that "Plaintiffs are entitled to bring forward a lengthy complaint, particularly where it involves multiple plaintiffs, multiple defendants and multiple causes of action." The court also acknowledged that the 132-page Complaint, despite requiring the defendants to constantly cross-reference one section with another without any guidance, "arguably sets forth whatever grounds are available for each claim."

Nor does the plaintiffs' legal analysis focus on the basis for the district court's disposition. All of the cases cited by the plaintiffs discuss the length and complexity of complaints, precisely the two issues that the district court had already resolved in the plaintiffs' favor. The plaintiffs also attempt to convert the district court's Rule 8 dismissal into a Rule 12(b)(6) dismissal for failure to state a claim, presumably because the latter would afford them a more favorable de novo review by this court. *See Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir. 1987) ("Whether the district court correctly dismissed Dugan's claims pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law subject to *de novo* review."). But the plaintiffs would be unlikely to prevail even under that standard of review because the district court relied on basic reading comprehension more than its discretion in finding that several of the plaintiffs' claims failed to identify the specific plaintiffs bringing them.

The plaintiffs' Complaint "simply does not provide sufficient information to give the defendants fair notice of the claim or claims against them, and the court is not required to create a claim for [the plaintiffs]." *Janita Theresa Corp.*, 1997 WL 211247, at *1 (quotation marks omitted). Finally, the plaintiffs make no mention of the fact that the district court's Rule 8 dismissal of their Complaint was *conditional*, granting them 30 days' leave to amend in order to comply with the pleading requirements of Rule 8. This was a benevolent exercise of the district court's discretion, not an abuse thereof. We therefore uphold the district court's dismissal of the plaintiffs' Complaint for failure to comply with the pleading requirements of Rule 8.

## B.     Dismissal of MII and MI for lack of personal jurisdiction

Because we affirm on other grounds, we need not reach the comparatively closer issue of whether the district court had personal jurisdiction over MII and MI. Defense counsel argues to the contrary, contending at oral argument that because the dismissal of MII and MI for lack of personal jurisdiction was with prejudice, disposition of the issue on appeal is necessary to ensure the preclusive, res judicata effect of that dismissal. That argument is misplaced, however, because this circuit's caselaw instructs that even if the district court had been correct in concluding that it lacked personal jurisdiction over MII and MI, the court's dismissal on that ground should have been without, not with, prejudice. *See Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) ("dismissals for lack of personal jurisdiction should be made 'without prejudice'"). In any event, the Rule 8 dismissal of MII, MI, and the other two remaining defendants—which we have already reached and decided in their favor in Part II.A. above—*was* with prejudice, albeit by default. *See* Fed. R. Civ. P. 41(b) ("Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule . . . operates as an adjudication upon the merits.").

### C.      Dismissal of BWXTO for insufficient service of process

#### 1.      *Standard of review*

The plaintiffs failed to serve process on BWXTO within the 120-day time frame required by Rule 4(m) of the Federal Rules of Civil Procedure. Concluding that the plaintiffs had failed to demonstrate good cause for missing this deadline, the district court dismissed BWXTO pursuant to Rule 12(b)(5) for insufficient service of process. We review such dismissals under the abuse-of-discretion standard. *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1994).

#### 2.      *Discussion*

None of the parties disputes the facts surrounding the plaintiffs' attempted service of process on BWXTO. The district court's opinion provides a summary of the relevant details:

> Plaintiffs' original Complaint was filed on May 22, 2003. Plaintiffs Amended Complaint was then filed on June 26, 2003. In spite of an alert from Defendants less than five weeks after the Amended Complaint was filed that service had not been perfected, Plaintiffs did not attempt to perfect service until they requested the Clerk to issue a summons and the Amended Complaint on December 31, 2003. Further, Plaintiffs did not request nor obtain leave of Court to extend the time period during which service must be completed.

Rule 4(m) of the Federal Rules of Civil Procedure requires completion of service of process within 120 days after filing of the complaint. FED. R. CIV. P. 4(m). Dismissal of the action "shall" follow unless the "plaintiff shows good cause" for failure to meet the 120-day deadline. *Id.* The plaintiffs, who waited more than half a year before attempting to serve BWXTO, plainly failed to meet that deadline here. Accordingly, the issue is whether the plaintiffs showed good cause for their failure and, more specifically, whether the district court abused its discretion in concluding that they had not.

We are reluctant to disturb a district court's "discretionary determination" of whether good cause has been shown. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) (citation omitted). Establishing good cause is the responsibility of the party opposing the motion to dismiss—here, the plaintiffs—and "necessitates a demonstration of why service was not made within the time constraints." *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994). To be sure, the district court's order misleadingly suggests that the plaintiffs made no such demonstration whatsoever, because the order does not explicitly mention any of the several reasons for the delay set forth by the plaintiffs in their April 5, 2004 memorandum opposing the defendants' motion to dismiss. That omission alone, however, does not render the district court's decision incorrect. The omission speaks as much, if not more, to the inadequacy of the reasons given by the plaintiffs as to the court's failure to discuss those reasons.

Three principal justifications—collectively meant to establish good cause—are put forth by the plaintiffs to explain their failure to serve BWXTO within the required 120-day window. First, "[s]tarting in late July [of 2003], discussions with Defense counsel ensued regarding service of process. . . . As Counsel recalls, a variety of topics were discussed including waiver of service by BWXTO." The plaintiffs concede, however, that "it became apparent that the issues regarding service would not be resolved amicably." Second and third, "significant personal matters involving the welfare of Counsel's young children caused Counsel substantial problems, and then co-counsel was not providing assistance."

These reasons, taken either individually or as a whole, hardly compel a finding of good cause. As the district court explicitly noted in its order, "Plaintiffs did not request nor obtain leave

of Court to extend the time period during which service must be completed." The plaintiffs' counsel should have taken the simple step of requesting an extension of time from the court if his children's welfare had truly affected his ability to serve process. After all, as the past procedural history of this case makes clear, he certainly knew how to request more time.

This court's decision in *Habib*, on which the plaintiffs rely for the proposition that "[s]ignificant personal matters are matters which the Court can consider," is easily distinguished from the facts of this case. There, this court reversed the district court's dismissal on the basis that the district court, in its good-cause inquiry, had abused its discretion "by failing to consider all of Mr. Habib's medical claims, as well as his reasonable and diligent efforts to complete service *pro se*." *Habib*, 15 F.3d at 75. Unlike here, the relevant "significant personal matters" in *Habib* were personal to the plaintiff himself and, in both kind (medical) and degree (paralysis), far more serious than the unspecified, though surely unfortunate, "welfare" matters that befell the children of the plaintiffs' counsel. The *Habib* plaintiff, moreover, unlike the numerous plaintiffs here, was *pro se*, thus requiring this court to construe Rule 4 "leniently." *Id.* at 74. We therefore hold that the district court did not abuse its discretion in dismissing BWXTO for insufficient service of process.

**D.** **The district court did not abuse its discretion in denying the plaintiffs' motion to file an amended complaint out of time**

*1.* *Standard of review*

Rule 6(b) of the Federal Rules of Civil Procedure provides that when a party moves the court to accept a filing after the relevant deadline, the court may do so "where the failure to [file before the deadline] was the result of excusable neglect." FED. R. CIV. P. 6(b). We review a district court's determination of excusable neglect, or lack thereof, under the abuse-of-discretion standard. *Turner v. City of Taylor*, 412 F.3d 629, 649 (6th Cir. 2005). Such abuse exists if the district court "relie[d] on erroneous findings of fact, applie[d] the wrong legal standard, misapplie[d] the correct legal standard when reaching a conclusion, or ma[de] a clear error of judgment." *Reeb v. Ohio Dep't of Rehab. and Corr.*, 435 F.3d 639, 644 (6th Cir. 2006). Here, the governing legal standard for excusable-neglect determinations is a balancing of five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

*2.* *Discussion*

As their respective briefs make clear, both parties agree that the district court applied the proper legal standard in evaluating the issue of excusable neglect. In its 10-page order, the district court methodically applied each of the five *Pioneer* factors to the relevant facts of the case before it, concluding that each factor weighed in favor of the defendants. The plaintiffs simply contend that the court's conclusion was wrong.

In their brief, the plaintiffs cite five cases that purportedly demonstrate the error of the district court's conclusion. Two distinct problems plague their attempt. First, all five cases are district court opinions, albeit from courts within this circuit, and thus lack precedential weight in this court. Second, the district court's excusable-neglect analysis necessarily encompassed at least two, not one, instances of neglect: *both* the "two day inadvertent mistake" regarding the November 24, 2004 deadline *and* the subsequent 37-day delay in filing the motion to accept the late-filed amended complaint. The district court, in accordance with *Pioneer*'s command, properly considered these last two instances of neglect not in isolation, but by "taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. Included among the relevant circumstances as found by the district court were numerous instances of "previous dilatory conduct,"

accompanied by the court's "repeated warnings," which "insult[ed] the court's dignity" and "created a tortured process."

In their brief, however, the plaintiffs act as though their two-day delay in missing the November 24, 2004 deadline was the only instance of neglect at issue. The plaintiffs also failed to provide in their motion any reason whatsoever—much less one that could constitute a legally valid excuse—for the 37-day delay that followed on the heels of the 2-day delay. By relying on the five district-court opinions noted above, moreover, the plaintiffs appear to be arguing that because some district courts have found excusable neglect for a one- or two-day delay in filing, the district court here necessarily abused its discretion in failing to find excusable neglect. To accept the plaintiffs' argument would deprive the term "deadline" of much of its meaning. We decline to do so here.

Citing *Marks v. Shell Oil Co.*, 830 F.2d 68 (6th Cir. 1987), and *Ellison v. Ford Motor Co.*, 847 F.2d 297 (6th Cir. 1988), the plaintiffs further observe that "[t]his Court has already determined that a district court abuses its discretion when it fails to consider a pending motion to amend a complaint and terminates litigation by deciding a motion for summary judgment adverse to the party whose motion to amend the complaint is pending." In *Marks* and *Ellison*, however, this court made clear that requiring the district court to "evaluate the pending motion" prior to granting summary judgment "is not to say that the court [i]s required to grant plaintiff's motion." *Ellison*, 847 F.2d at 301 (discussing the holding in *Marks*). Here, of course, the district court not only evaluated the plaintiffs' November 4, 2004 motion for a 20-day extension to amend their complaint, but *granted* it as well. The cited cases simply do not support the further proposition that the district court was then required to accept the amended complaint two days after the deadline specified by the plaintiffs themselves had lapsed.

Finally, the plaintiffs cite *Johnson v. Ventra Group, Inc.*, No. 96-1463, 1997 U.S. App. LEXIS 21714 (6th Cir. Aug. 13, 1997) (unpublished), for the proposition that "a district court abuses its discretion when it fail[s] to weigh the cause for delay when refusing to allow a plaintiff to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)." Unfortunately for the plaintiffs, this legal principle is inapposite here. The district court addressed the "cause for delay," one of the five key factors under the *Pioneer* analytic framework, in no uncertain terms:

> The third factor to be considered is the reason for the delay. The stated reason for the delay is that Plaintiffs' Counsel was under the mistaken impression that the amended complaint was due on November 25, 2004 instead of the Court-ordered date of November 24, 2004. . . . The only reasons given for thinking that he had until November 25th are that one of his secretaries also failed to understand that the amended complaint was due not later than November 24th and that Defendants' Counsel allegedly agreed to an extension beyond November 24, 2004.

In finding counsel's proffered excuses unpersuasive, the district court also noted that "this is not the first time that Plaintiffs' Counsel has ignored the orders of this Court."

To his credit, the plaintiffs' counsel, in his final memorandum submitted to the district court on behalf of his clients, asked the court to lay blame for the various procedural gaffes where it ought to lie—with himself. "Assuming, arquendo [sic], that a punishment should be impoosed [sic] for this one day [sic] error then it should fall on Counsel and not on the Clients or the Merits of this case." But the Supreme Court explicitly rejected a similar argument in *Pioneer*, holding that clients must "be held accountable for the acts and omissions of their chosen counsel." 507 U.S. at 396-97. The *Pioneer* Court reaffirmed what amounts to an agency- and choice-based rule of imputation, as first explained by the Court in *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962):

Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Id.* at 633-34 (quotation marks omitted).

This court expressly adopted the above rule in the analogous civil case of *Allen v. Murph*, 194 F.3d 722, 723-24 (6th Cir. 1999) (citing *Pioneer* as grounds for upholding the district court's finding of inexcusable neglect even though the neglect was due solely to the "carelessness of these attorneys" and even though the clients themselves had acted "promptly and diligently"). Nor do the possible pitfalls of "the cyberworld"—to which the plaintiffs' counsel here attributed his "sins" for the first time during oral argument—enhance his position.

In light of the governing abuse-of-discretion standard of review, the plaintiffs' reliance on the "elastic" and "at bottom . . . equitable" nature of the excusable-neglect standard is misplaced. *See Pioneer*, 507 U.S. at 392, 395. For even if another district court on these facts might have determined that equity tipped in the plaintiffs' favor, we must refrain from doing so unless we can say with "a definite and firm conviction" that this particular district court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000). The record in the present case, as set forth and analyzed above, falls well short of establishing that the district court "relie[d] on erroneous findings of fact, applie[d] the wrong legal standard, misapplie[d] the correct legal standard when reaching a conclusion, or ma[de] a clear error of judgment." *See Reeb*, 435 F.3d at 644.

Taking all of the relevant circumstances into account in the case before us, "a fair-minded judge could easily find that the carelessness of [plaintiffs'] attorneys in allowing the [20]-day period to run was inexcusable." *See Allen*, 194 F.3d at 724. We therefore hold that the district court did not abuse its discretion in rejecting the plaintiffs' late-filed amended complaint, thereby terminating the entirety of the litigation.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.