<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>
File Name: 14a0912n.06

Case No. 14-5417

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 09, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CAROL FAYE SMITH, surviving spouse and Administrator of the Estate of Robert Gail Smith, | ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellant, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| v. | ) | TENNESSEE |
| | ) | |
| HOLSTON MEDICAL GROUP, P.C.; STEPHEN MATTHEW BURKE, M.D., | ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| GAIL L. STANLEY, M.D.; WELLMONT PHYSICIAN SERVICES, INC., dba Wellmont Infectious Disease, | ) ) ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: COOK and WHITE, Circuit Judges; MICHELSON, District Judge[*]

COOK, Circuit Judge. In this medical malpractice action, Plaintiff-Appellant Carol Faye

Smith, as the surviving spouse of Robert Gail Smith and administrator of his estate, sued

Defendants Stephen Matthew Burke, M.D., and Holston Medical Group, P.C., and Defendants-

Appellees Gail L. Stanley, M.D., and Wellmont Physician Services, Inc., d/b/a Wellmont

---

[*]The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, sitting by designation.

Infectious Disease, alleging negligence and loss of consortium in connection with the death of her husband. Mrs. Smith appeals the district court's grant of summary judgment for Dr. Stanley and Wellmont. We AFFIRM.

I.

In June 2010, Dr. Burke referred Robert Smith to Dr. Stanley for treatment of a Methicillin-resistant Staphylococcus aureus infection in Mr. Smith's lower spine. The infection spread to Mr. Smith's brain and claimed his life on December 10, 2010. In February 2012, Mrs. Smith filed this diversity action against the doctors and their employers, alleging that Drs. Stanley and Burke were negligent in failing to monitor Robert's infection more closely.

Mrs. Smith retained Sheldon Markowitz, M.D., M.S., to testify as an expert witness that Drs. Stanley and Burke's treatment deviated from the standard of care acceptable in Eastern Tennessee. "It is the established law in Tennessee that malpractice actions involving issues of negligence and proximate cause require expert testimony unless the act of alleged malpractice lies within the common knowledge of a layman." *Bowman v. Henard*, 547 S.W.2d 527, 530–31 (Tenn. 1977) (internal citations omitted). In order to qualify as an expert in a healthcare liability action, the witness must have practiced the relevant profession or specialty in Tennessee or a bordering state "during the year preceding the date that the alleged injury or wrongful act occurred." Tenn. Code Ann. § 29-26-115.

Dr. Markowitz held a Virginia medical license and board certification in the areas of infectious disease and internal medicine. He informed Mrs. Smith's counsel that he was retired, but represented that he still "practice[d] consulting, medical chart review, and teaching." (R. 18-1, Markowitz Statement at 1; R. 41-2, Mot. Dismiss, Ex. B Haynes Aff. ¶ 4.) According to counsel, Dr. Markowitz estimated that he still "consult[ed] on three to five cases per year,"

including the year before the defendants' alleged negligence. (R. 41-2, Haynes Aff. ¶ 4; R. 45-1, Mot. Am. Expert Deadline, Tate Aff. ¶ 3.) During Dr. Markowitz's April 2013 deposition, however, he testified to consulting once or twice per year from 2010 through 2012. (R. 49, Expert Deadline Order at 2.) And he could not state with certainty whether he consulted on any cases in 2009. (*See* R. 49, Expert Deadline Order at 2.)

The defendants moved to exclude Dr. Markowitz's testimony for failure to meet Tennessee's statutory expert-witness requirements. Mrs. Smith moved to dismiss the complaint without prejudice in order to "present an expert witness that will more clearly qualify under Tennessee's competency provisions set forth in T.C.A. § 29-26-115(b)." (R. 41, Mot. Dismiss ¶¶ 8-10.) The district court granted the defendants' motion to exclude and denied Mrs. Smith's motion for voluntary dismissal. It found that permitting voluntary dismissal after the exclusion of Dr. Markowitz's expert testimony would cause the defendants to suffer "plain legal prejudice." Nine days later, Mrs. Smith moved to extend the expert-disclosure deadline, which elapsed approximately a year earlier, so that she might present a qualified expert. The district court found no good cause to extend the deadline, attributing the selection of Dr. Markowitz to a lack of diligence by Mrs. Smith and her attorneys.[1] Given the dispositive effect of Dr. Markowitz's exclusion under Tennessee law, the defendants moved for summary judgment, which the court granted. Mrs. Smith appeals the judgment, arguing that the defendants prevailed only because the district court abused its discretion in denying her motions to dismiss the

---

[1]Mrs. Smith presented her motion to extend the expert-disclosure deadline to the magistrate judge, who denied her request. She timely objected to the magistrate judge's denial. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). But the district judge overruled her objection on the ground that the magistrate judge's order was not clearly erroneous or contrary to law.

complaint voluntarily and to extend the expert-disclosure deadline. She does not challenge the judgment on the merits.

## II.

The Federal Rules of Civil Procedure commit to the district court's sound discretion whether to permit voluntary dismissal after the defendant has filed an answer, Fed. R. Civ. P. 41(a)(2), and whether to amend a pretrial scheduling order, Fed. R. Civ. P. 16(b)(4). We review such rulings for an abuse of this discretion. *E.g.*, *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012); *Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994). "It is an abuse of discretion for the district court to rely on erroneous findings of fact, apply the wrong legal standard, misapply the correct legal standard, or make a clear error in judgment." *Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.*, 583 F.3d 948, 953 (6th Cir. 2009) (citing *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)).

### A.     *Voluntary Dismissal*

"[T]he purpose of Rule 41(a)(2) is to protect the nonmovant . . . from unfair treatment." *Id.* (citing *Grover*, 33 F.3d at 718). To effectuate this purpose, district courts consider whether permitting voluntary dismissal will cause the nonmovant to suffer "plain legal prejudice," as opposed to the "mere prospect of a second lawsuit." *Grover*, 33 F.3d at 718.

> In determining whether a defendant will suffer plain legal prejudice, a court should consider such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant.

*Id.* (citing *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988)). Importantly, plain legal prejudice results when the district court permits voluntary dismissal "[a]t the point when the law clearly dictates a result for the defendant . . . ." *Id.* at 719.

The district court found such prejudice here, concluding that "dismissal without prejudice . . . would strip [the defendants] of an absolute defense. [Mrs. Smith] cannot prove her medical malpractice claims without expert medical proof." But Mrs. Smith contends that Dr. Markowitz's exclusion did not dictate a result for the defendants because at the time she "still had the option of filing a motion for late disclosure of an expert." Mrs. Smith reasons that the possibility she might file (and the district court might grant) a motion to extend the expert-disclosure deadline rendered the above defense less than absolute.

Notwithstanding Mrs. Smith's hypothetical avenue for relief, the substantive law applied to the facts of her case at the time of denial dictated a result for the defendants. *See Phillips v. Ill. Cent. Gulf R.R.*, 874 F.2d 984, 987–88 (5th Cir. 1989) (holding that statute-of-limitations defense was absolute despite possibility that court might grant plaintiff's pending motion to transfer). As matters stood, Mrs. Smith lacked an expert qualified to testify in Tennessee, and the deadline for disclosing a new one had long-since expired. The district court recognized that an absolute defense existed under the circumstances, *cf. Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 500–01 (6th Cir. 2007) (finding the law did not dictate a result for defendant where the district court equivocated on the plaintiffs' public-policy objections to an arguably dispositive statute-of-repose defense), and Mrs. Smith conceded as much (*see* R. 68, Pl.'s Opp'n Summ. J. at 1). The district court acted within its discretion when it declined to speculate on the merits of a motion that Mrs. Smith would not file until nine days *after* its order.

## B. *Motion to Amend Expert-Disclosure Deadline*

Mrs. Smith next challenges the district court's denial of her motion to extend the expert-disclosure deadline. Rule 16 permits district courts to amend the pretrial scheduling order provided that the movant demonstrates "good cause." Fed. R. Civ. P. 16(b)(4). "The primary

measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements," though courts may also consider prejudice to the nonmoving party. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)) (internal quotation marks omitted). The district court found that Mrs. Smith lacked good cause because she failed to exercise reasonable diligence in vetting Dr. Markowitz. We have upheld past rulings where the plaintiff sought to reopen discovery without good cause in order to cure similar deficiencies in expert testimony. *See Pride v. BIC Corp.*, 218 F.3d 566, 579 (6th Cir. 2000); *cf. Downs v. Perstorp Components, Inc.*, 26 F. App'x 472, 476–77 (6th Cir. 2002).

But Mrs. Smith contends that her case is different. She blames any failure to perceive Dr. Markowitz's shortcomings on the doctor's "untruthful" statements, "misrepresentations," and "deception." As its order makes clear, however, the district court found that Dr. Markowitz did not deceive Mrs. Smith's counsel.

The most compelling evidence that Dr. Markowitz actively misrepresented his credentials comes from the affidavit of Mary Lynn Tate, one of Mrs. Smith's attorneys. Ms. Tate avers: "[Dr. Markowitz] told me that within the year of the negligence alleged by the Plaintiff herein he consulted for colleagues regarding patient care in 3-5 cases; he reviewed several medical charts for attorneys . . . ; and he taught some classes at the Medical College of Virginia though not regular curriculum." (R. 45-1, Tate Aff. ¶ 3.) But in an earlier affidavit, Mrs. Smith's other attorney, Olen G. Haynes, called the figure of three to five consultations per year an "estimate." (R. 41-2, Haynes Aff. ¶ 4.) And Dr. Markowitz's expert-witness statement, filed with the complaint, contains the more general assertion that he "regularly practiced medicine in [his] two

specialties for many years and currently practice[s] consulting, medical chart review and teaching in these areas." (R. 18-1, Markowitz Statement at 1.)

After considering this evidence, the district court described Dr. Markowitz's representations as "vague" and found "[i]t abundantly clear, from Ms. Tate's affidavit, that there was a serious lack of documentation to inform whether Dr. Markowitz had actually practiced medicine in the year before [Mr. Smith]'s death . . . ." (R. 49, Expert Deadline Order at 3–4.) The court found it unreasonable for counsel to rely on Dr. Markowitz's estimates without inquiring into the "specifics" of his professional activities in 2009 and 2010. It also detected "serious warning signs" in Dr. Markowitz's *curriculum vitae* that Mrs. Smith and her counsel either missed or ignored. Specifically, the CV indicated that Dr. Markowitz ceased actively teaching and practicing medicine in 2004 and his only positions since that time were an emeritus professorship and Admissions Committee appointment at the Virginia Commonwealth University School of Medicine. Mrs. Smith offers no tenable explanation for how her counsel missed these "warning signs" during the vetting process.

Other evidence on the record supports the district court's findings. First, Dr. Markowitz's deposition testimony fairly aligns with his pre-deposition statements. He testified that he (1) saw one or two patients per year from 2010 through 2012, (2) served as professor emeritus and admissions committee member at VCU, and (3) reviewed charts for local colleagues who would contact him by phone. (*See* R. 31-1, Defs.' Mot. Strike, Ex. 1 Markowitz Dep. at 50-51, 110-11, 128-29, 164-65.) Although this level of practice falls below the low-end estimate cited in the affidavits of Mrs. Smith's attorneys, we cannot say that the district court abused its discretion in finding the testimony consistent enough to reject Mrs. Smith's justification on grounds of deceit. The record also supports the finding that Mrs. Smith's counsel

did not act diligently in light of the "warning signs" in Dr. Markowitz's CV. Mrs. Smith's counsel first met Dr. Markowitz in person the day prior to his deposition. Before that, counsel communicated with the doctor by "e-mail contact and maybe a conversation or two by phone." (R. 42-1, Markowitz Dep. at 5.) And although Ms. Tate asserts that Dr. Markowitz came "highly recommended by several colleagues," there is no indication whether her colleagues discussed Dr. Markowitz's work history from 2009 through 2010 or his qualifications to testify as an expert in Tennessee. In short, we find no basis on which to conclude that the district court abused its discretion in viewing the evidence as it did.

Nor do Mrs. Smith's remaining arguments move us to hold otherwise. She contends that granting her motion would not "unduly" prejudice the defendants. But courts consider the extent of prejudice to the nonmoving party only if the movant proceeded diligently, and then only to ascertain whether there exist "additional reasons to deny a motion." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (cited approvingly in *Inge*, 281 F.3d at 625). Similarly, Mrs. Smith's expeditious retention of a new expert after Dr. Markowitz's exclusion has no bearing on whether she exercised reasonable diligence in timely vetting Dr. Markowitz. *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003) ("Plaintiffs can demonstrate 'good cause' for their failure to comply with the original schedule[] by showing that despite their diligence they could not meet the original deadline.").

And that the defendants moved to exclude Dr. Markowitz after the scheduling order's expert-objection deadline does not alter our analysis. Mrs. Smith forfeited this procedural challenge by failing to oppose the motion to exclude Dr. Markowitz.

Finally, Mrs. Smith protests that it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere

technicalities." *Foman v. Davis*, 371 U.S. 178, 181 (1962). But a party's failure to exercise reasonable diligence is no mere technicality. *Johnson*, 975 F.2d at 610 ("The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of Johnson's case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier."); *see also Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 754 (6th Cir. 2003) ("The 'importance of . . . proposed testimony cannot singularly override the enforcement of local rules and scheduling orders.'" (citation omitted)).

## III.

Mrs. Smith fails to demonstrate that the district court abused its discretion in denying either her motion to dismiss or her motion to extend the expert-disclosure deadline. Accordingly, we AFFIRM the district court's entry of summary judgment in the defendants' favor.

**HELENE N. WHITE, Circuit Judge, concurring.**

I write separately to note that the district court had far more discretion than it perceived itself to have,[1] and that were it not for the curriculum vitae's failure to include any references to the representations on which Plaintiff's counsel relied, I would hold that the district court abused its discretion in denying Plaintiff's motion to amend the scheduling order.

---

[1] Nevertheless, because the district court clearly understood that it had discretion to grant or deny Plaintiff's motion to amend the scheduling order, I would not reverse on this basis.