RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

COLIN O'KROLEY,

*Plaintiff-Appellant,*

*v.*

No. 15-6336

FASTCASE, INC.; GOOGLE, INC.; TEXAS OFFICE OF
COURT ADMINISTRATION; 11TH COURT OF APPEALS;
YASNI.COM,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:13-cv-00780—Todd J. Campbell, District Judge.

Decided and Filed: July 22, 2016

Before: SUTTON and COOK, Circuit Judges; HOOD, District Judge.[*]

———————

**COUNSEL**

**ON BRIEF:** Eric P. Schroeder, Jacquelyn N. Schell, BRYAN CAVE LLP, Atlanta, Georgia,
Robb S. Harvey, WALLER LANSDEN DORTCH & DAVIS, LLP, Nashville, Tennessee, Brian
M. Willen, Jason B. Mollick, WILSON SONSINI GOODRICH & ROSATI, P.C., New York,
New York, for Appellee Google. Scot M. Graydon, OFFICE OF THE TEXAS ATTORNEY
GENERAL, Austin, Texas, for Texas Court Appellees. Colin O'Kroley, Bon Aqua, Tennessee,
pro se.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting
by designation.

---

**OPINION**

---

SUTTON, Circuit Judge.   Colin O'Kroley googled himself and did not like the results. "Texas Advance Sheet," an entry read, followed by the words "indecency with a child in Trial Court Cause N . . . Colin O'Kroley v Pringle." R. 1 at 4–5.   Truth be told, O'Kroley was never involved in a case about indecency with a child.   What had happened was that his case, *O'Kroley v. Pringle*, was listed immediately after another case, a child-indecency case, on the Texas Advance Sheet, a service that summarizes Texas judicial opinions.   If users clicked the Google link they would have seen how the Texas Advance Sheet works and would have seen that the two cases had no relation.   But if they did not click the link and stayed on Google, they would see only the name of his case and the description of the other case separated by an ellipsis.

Claiming "severe mental anguish" from the listing, O'Kroley sued Google (and a number of other entities) for $19,200,000,000,000 (that's trillion), on causes of action ranging from "libel" to "invasion of privacy," from "failure to provide due process" to "cruel and unusual punishment," from "cyber-bullying" to "psychological torture."   R. 1 at 10, 17, 20–21, 24.

The district court rejected the claims as a matter of law, holding that Google couldn't be liable for the way it displayed search results.   It dismissed O'Kroley's complaint against Google based on the Communications Decency Act, which insulates interactive computer services from certain types of lawsuits.   *See* 47 U.S.C. § 230.   And it dismissed the rest of his complaint on a variety of other grounds.

The district court got it right in each respect.

*Google*.   Seeking to encourage websites like Google to reproduce content from other Internet users, *see id.* § 230(a)–(b), Congress enacted the Communications Decency Act, which applies to "interactive computer service provider[s]" and which immunizes them from claims that seek to treat them as "publisher[s]" of third-party content.   *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 409 (6th Cir. 2014); *see* 47 U.S.C. § 230(c).   "No cause of action may be brought," the Act says, "and no liability may be imposed under any State or local law,"

for any claim that purports to treat an "interactive computer service" "as the publisher or speaker of any information provided" by someone else.  47 U.S.C. § 230(c), (e)(3).

That's what we have here.  Google is an interactive computer service, an entity that provides "access by multiple users to a computer server." *Id.* § 230(f)(2); *cf. Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009).  And all of O'Kroley's claims treat Google as the publisher or speaker of the allegedly defamatory content on its website, even though a separate "entity [was] responsible . . . for the [content's] creation." 47 U.S.C. § 230(f)(3).  Under the Act, Google thus cannot be held liable for these claims—for merely providing access to, and reproducing, the allegedly defamatory text.  "If a website displays content that is created entirely by third parties, . . . [it] is immune from claims predicated on that content." *Jones*, 755 F.3d at 408; *see Klayman v. Zuckerberg*, 753 F.3d 1354, 1357–59 (D.C. Cir. 2014).

O'Kroley insists that Google did more than merely display third-party content.  The company was "responsible," he maintains, for the "creation or development" of the content, making it liable.  47 U.S.C. § 230(f)(3).  Google, true enough, performed some automated editorial acts on the content, such as removing spaces and altering font, and it kept the search result up even after O'Kroley complained about it.  But these acts come within "a publisher's traditional editorial functions"—"deciding whether to publish, withdraw, postpone or alter content"—and thus Google remains eligible for the statute's immunity. *Jones*, 755 F.3d at 416; *see Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  "[T]he term 'develop,'" we have explained, does not "include the functions of an ordinary search engine." *Jones*, 755 F.3d at 409; *see Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008) (en banc).

Nor did Google's alterations "materially contribute to the alleged unlawfulness of the content." *Jones*, 755 F.3d at 412.  O'Kroley points to the ellipsis that separated "indecency with a child" from his name and case information.  Doesn't that mean, he asks, that Google is "responsible for what makes the displayed content allegedly unlawful"—linking him to a crime he didn't commit? *Jones*, 755 F.3d at 410.  No, it does not.  For Google did not add the ellipsis to the text.  It was already in the Texas Advance Sheet's case preview.  Because the Act

immunizes Google for reproducing this third-party content, the district court correctly granted Google's motion to dismiss. *See* 47 U.S.C. § 230(c), (e).

*Other defendants*. The district court also correctly dismissed the other defendants: Fastcase, the author of the Texas Advance Sheet; Yasni, a German people search engine; and the Texas courts and their administrative office. For nearly three years (and counting), O'Kroley has not properly served Fastcase, despite being required to do so within 120 days after he filed his complaint. Fed. R. Civ. P. 4(m) (pre-2015 version). Because O'Kroley offered no "good cause" for his failure to comply with this rule, the district court permissibly dismissed Fastcase from the case. *Id.*; *see Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521–22 (6th Cir. 2006). The same goes for Yasni, a corporation in a foreign country subject to special service requirements, because O'Kroley failed to follow those requirements as well. Fed. R. Civ. P. 4(f), (h)(2). And although O'Kroley properly served the Texas courts, he offered no basis for the district court to exercise personal jurisdiction over them, a gap that remains unfilled on appeal.

*Other arguments*. O'Kroley raises several other points on appeal, ranging from the meritless to the frivolous. On the meritless side: He "requests a court appointed attorney," Appellant's Br. 13, but he has not shown the "exceptional circumstances" needed to appoint one, *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993). On the frivolous side: He asks us to strike down the Communications Decency Act ("as a simple matter of logic"); he claims violations of the Eighteenth Amendment (the former prohibition on alcohol repealed long before the Internet came into being); he asks us to add Georgetown University as a defendant (because it might be using this case in its "Robots and Law" class); and he contends the judges below were "biased" against him (because "[t]hey may be ignorant about the English language"). Appellant's Br. 11–16. To restate some claims is to reject them.

\* \* \*

In most respects, O'Kroley didn't accomplish much in suing Google and the other defendants. He didn't win. He didn't collect a dime. And the search result about "indecency with a child" remains publicly available. All is not lost, however. Since filing the case, Google users searching for "Colin O'Kroley" no longer see the objectionable search result at the top of

the list.  Now the top hits all involve this case (there is even a Wikipedia entry on it).  So:  Even assuming two premises of this lawsuit are true—that there are Internet users other than Colin O'Kroley searching "Colin O'Kroley" and that they look only at the Google previews rather than clicking on and exploring the links—it's not likely that anyone will ever see the offending listing at the root of this lawsuit.  Each age has its own form of self-help.

For these reasons, we affirm.