NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0223n.06
Filed: March 28, 2007

Nos. 05-5045/5046/5047/5048/5049/5050/5051/5052/5053/5054/5055/5056/5057/5058

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BRIDGEPORT MUSIC, INC. et al., | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LONDON MUSIC, U.K. et al., | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | OPINION |

**Before: NORRIS, GILMAN, and McKEAGUE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Bridgeport Music, Inc. and Southfield Music, Inc. (collectively, Bridgeport) filed suit against approximately 800 defendants involved in the record and music-publishing business, alleging various claims of copyright infringement. Several years later, Bridgeport moved to voluntarily dismiss with prejudice its actions against the 14 defendants involved in this appeal. The district court entered the parties' "Stipulation of Dismissal with Prejudice," but only after noting on the stipulation that "[t]he entry of this stipulation shall constitute the judgment in this action."

Believing that the dismissals made them the "prevailing parties" under 17 U.S.C. § 505 (the relevant section of the Copyright Act), the defendants filed a motion for costs and attorney fees. Bridgeport filed a cross-motion, requesting that the district court deny the defendants' motion. The

-1-

court agreed with Bridgeport, reasoning that (1) the defendants were not the prevailing parties within the meaning of *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), and (2) even if they were the prevailing parties, the court would exercise its discretion to deny their motion. On appeal, the defendants contest both of these alternative rulings. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Bridgeport's initial complaint, filed in May of 2001, was nearly one-thousand pages long and contained approximately 500 separate counts set forth in more than 5,200 paragraphs. Deeming the case in its original form "unmanageable," the district court ordered the action severed into 477 separate actions, only 14 of which are at issue in this appeal. These 14 actions were among the nearly 110 separate complaints served on the defendants and their affiliates in September of 2001. Intensive litigation among all of the parties—replete with multiple discovery requests, court appearances, and motions for summary judgment—continued until February of 2002, when the district court ordered a stay to allow for the resolution of the first 10 cases, none of which are at issue here.

The district court lifted the stay approximately one year later as to 40 additional actions, including the 14 cases presently at issue, to allow for further discovery. In March of 2004, Bridgeport offered to voluntarily dismiss each of the 14 cases in question, "but only on the condition that Defendants waive their right to seek attorneys' fees and costs under the Copyright Act." The defendants successfully persuaded Bridgeport to abandon this condition and, in April of 2004, the

parties stipulated to voluntary dismissals with prejudice pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, but subject to the defendants' "express reservation of [the] right to seek fees and costs." On April 9, 2004, the district court entered the stipulated dismissals as "the judgment in this action."

Believing that they were the "prevailing parties" within the meaning of 17 U.S.C. § 505, the defendants subsequently filed identical motions seeking costs and attorney fees. The district court denied these motions, setting forth its reasoning in a fairly lengthy memorandum opinion that encompasses two alternative rulings. *Bridgeport Music, Inc. v. London Music, U.K.*, 345 F. Supp. 2d 836 (M.D. Tenn. 2004). Although the district court rendered this opinion only in the "low-numbered case," the court denied the defendants' identical motions in the other 13 cases at issue in this appeal simply by referring to its initial opinion.

The district court first concluded that the defendants were not the prevailing parties despite having obtained a voluntary dismissal with prejudice. *Id.* at 842. Because only prevailing parties are entitled to seek attorney fees under 17 U.S.C. § 505, the court denied the defendants' motions. The court's prevailing-party determination relied exclusively on the Supreme Court's decision in *Buckhannon*.

Second, the district court concluded that "even if the defendants were found to be prevailing parties in this matter, the Court opts to exercise its discretion by declining to award them fees and costs." *Id.* This alternative holding was based on the court's application of the governing multifactor standard for the discretionary award of attorney fees set forth in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

The defendants timely appealed, arguing that each of these two rulings was erroneous.

## II. ANALYSIS

### A.    Standard of review

Section 505 of the Copyright Act provides that a district court "may, in its discretion, award costs, including reasonable attorney fees, to the prevailing party in a civil suit." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 807 (6th Cir. 2005) (citing 17 U.S.C. § 505). This court accordingly reviews the denial of § 505 attorney-fee awards under the abuse-of-discretion standard. *Id.* "A district court abuses its discretion when it relies on clearly erroneous factual findings, improperly applies the law, or uses an erroneous legal standard." *Id.*

Under the abuse-of-discretion standard, "this court must review the district court's legal conclusions de novo." *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003). The district court's threshold prevailing-party determination in the present case is one such legal conclusion. *See Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005) ("Post-*Buckhannon*, every Circuit to address the issue has determined that the characterization of prevailing-party status for awards under fee-shifting statutes . . . is a legal question subject to *de novo* review.").

### B.    Prevailing-party determination under *Buckhannon*

The district court concluded, as an initial matter, that the defendants were not the prevailing parties as defined by the Supreme Court in *Buckhannon*. In *Buckhannon*, the Court confronted a procedurally different issue presented by the "catalyst theory"—namely, whether a plaintiff attains prevailing-party status after the defendant voluntarily ceases the conduct that gave rise to the lawsuit.

532 U.S. at 601. The Court held that only a party that has secured a judgment on the merits or a court-ordered consent decree is "prevailing" within the meaning of the various federal fee-shifting statutes to use that term. *Id.* at 604. Although the plaintiff in *Buckhannon* had achieved "the desired result," *id.* at 600, the defendant's voluntary cessation did not effect the requisite "material alteration of the legal relationship of the parties." *Id.* at 604. Absent "the necessary judicial *imprimatur* on the change" in the parties' relationship, said the Court, the plaintiffs could not be considered the prevailing parties. *Id.* at 605.

The defendants in the present case spent the majority of their brief insisting that *Buckhannon* did nothing to "overrule the unbroken line of precedent, including under the Copyright Act, that [voluntary] dismissals [with prejudice] constitute judgments on the merits, and the beneficiaries of such dismissals are prevailing parties." Moreover, to the extent that *Buckhannon* did establish a new test for prevailing-party status, they argue that a voluntary dismissal with prejudice satisfies "the foundational requirements" of that test. Specifically, the defendants assert that "there is a judgment on the merits; there is a change in the legal relationships between the parties; that change has a judicial *imprimatur*; and the *res judicata* effect of the dismissal is enforceable by the court."

These arguments are supported by the only two appellate courts that to date have considered whether a voluntary dismissal with prejudice satisfies the *Buckhannon* prevailing-party test. Both decided the issue in the defendants' favor. One is the Federal Circuit, which in *Highway Equipment Company v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006), "conclude[d] that as a matter of patent law, the dismissal with prejudice . . . has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties." The other is the Seventh

Circuit, which in *Claiborne v. Wisdom*, 414 F.3d 715 (7th Cir. 2005), affirmed an award of attorney

fees to the defendants under the Fair Housing Act, reasoning as follows:

> In arguing that a voluntary dismissal fails the *Buckhannon* test, Claiborne is looking at the wrong end of the telescope. The critical fact is not what prompted the district court to act; it is instead what the district court decided to do. Here, the language of the district court's judgment makes it clear that a decision on the merits has been rendered: Claiborne's claims were dismissed *with prejudice*.
>
> This order effects a material alteration of her legal relationship with the other parties, because it terminates any claims she may have had against them arising out of this set of operative facts. If she were to try to bring the same claim in the future, the defendants would be entitled to rely on a claim of preclusion or *res judicata* defense.

*Id.* at 719 (emphasis in original).

But the defendants' focus on the prevailing-party determination by the district court *in the*

*present case* is misplaced. That allegedly erroneous ruling was neither the end of the court's analysis

nor dispositive of the defendants' motion. If it had been, the district court would not have proceeded

to decide that the defendants were not entitled to attorney fees pursuant to the factors set out in

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). A favorable prevailing-party determination means

only that the relevant party is not precluded from *seeking* attorney fees. Whether, and to what extent,

that party will in fact be awarded attorney fees remains subject to the sound discretion of the district

court. In its memorandum opinion, the court below could not have been clearer on this very point:

> Alternatively, even if the defendants were found to be prevailing parties in this matter, the Court opts to exercise its discretion by declining to award them fees and costs in this matter. The Supreme Court has made clear that fees are awarded to prevailing parties under the Copyright Act only as a matter of the court's discretion.

*London Music*, 345 F. Supp. 2d at 842 (citing *Fogerty*, 510 U.S. at 534). By its own terms, therefore, the district court's order denying the defendants' motion for costs and fees did not turn solely on its prevailing-party determination.

Reversing the prevailing-party determination and remanding the case to the district court, in short, would have no effect on the ultimate outcome of this appeal. We accordingly decline to do so. This approach is consistent with prior decisions of this court, especially *United States v. Alpha Medical, Inc.*, 102 F. App'x 8 (6th Cir. 2004). In *Alpha Medical*, the court confronted a legal question that is virtually identical to the one at issue in the present case and chose a similarly cautious tack in not resolving it:

> There is no clear precedent, particularly in this circuit, as to whether a plaintiff's voluntary dismissal with prejudice, motivated by pure practicality rather than by any merit in the defendant's position, makes the defendant a "prevailing party" for purposes of an award of costs. *However, we need not resolve that question at this time because, even if it is assumed that [the defendant] is a prevailing party, as the district court determined in this case, the denial of costs is properly affirmed.*

*Id.* at 10 (emphasis added). Because the district court in the present case similarly made clear that it would deny the defendants' motion for attorney fees "even if [they] . . . were found to be prevailing parties," *London Music*, 345 F. Supp. 2d at 842, we conclude that any *Buckhannon* error, assuming without deciding that it exists, was harmless.

**C.** ***Fogerty* analysis**

The only material question on appeal, then, is whether the district court abused its discretion in denying the defendants' motion for attorney fees. To reiterate, "such abuse exists if the district court relied on erroneous findings of fact, applied the wrong legal standard, misapplied the correct

legal standard when reaching a conclusion, or made a clear error of judgment." *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (brackets and quotation marks omitted).

Neither party disputes that the multifactor standard set forth by the Supreme Court in *Fogerty* governs discretionary attorney-fees determinations under the Copyright Act. *See Bridgeport Music, Inc. v. Dimension Films*, 383 F.3d 390, 404-05 (6th Cir. 2004) (adopting *Fogerty* as the prevailing standard for attorney-fees-award determinations). "'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Fogerty*, 510 U.S. at 534 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)). These include the following "nonexclusive factors": "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19.

The district court in the present case explicitly based its attorney-fees ruling on the *Fogerty* factors. Its analysis applying those factors is set forth below:

> Early in this case the Court evaluated the First Amended Complaint and found that it adequately pleaded violations of federal law against the defendants. While the defendants continue to maintain that the plaintiffs' claims were factually unreasonable for a variety of reasons, they do not dispute that the plaintiffs wrote to them prior to filing suit in a effort to inquire into the very facts at issue, and that the defendants did not respond. As the Court indicated at the October 12, 2004 hearing on this matter, there is certainly no legal requirement that the defendants work with a potential plaintiff to clarify copyright issues. Refusal to do so, however, does tend to undercut their claims regarding the plaintiffs' motivations and unreasonableness.
>
> This refusal also bolsters the Court's conclusion, discussed above, that the deterrence and compensation factors do not carry the day for the defendants. Perhaps when a defendant has documents in hand or simple explanations that could spare it the

> months of litigation and tens of thousands of dollars in costs of which it now complains, it bears some of the risk for refusing to produce them. The Western District of Texas would apparently agree, as evidenced by its own analysis in a copyright action under similar circumstances . . . .

*London Music*, 345 F. Supp. 2d at 843 (citations omitted).

Notwithstanding this seemingly unassailable factor-by-factor analysis, the defendants insist that the district court abused its discretion by effectively "rel[ying] on erroneous findings of fact." *See Nafziger*, 467 F.3d at 522. Specifically, the defendants contend that the lone "fact" on which the district court based its analysis of each of the *Fogerty* factors—namely, the defendants' failure to respond to Bridgeport's pre-lawsuit letters—was not entirely true. The defendants allege that "[t]here was no demand letter sent to Defendants in at least *nine* of the 14 cases." (Emphasis in original.) Moreover, they insist that "[i]n the few cases where a demand letter had been sent, Defendants responded to the letter, a settlement was reached between Bridgeport and other interested parties that included Defendants, or the letter was sent many years after the purported infringement had ceased." (Citations omitted.)

The district court's error, according to the defendants, was therefore its decision to apply its *Fogerty* analysis in one case to each of the remaining 13 cases involved in this appeal via wholesale incorporation. This "indiscriminate analysis," in the defendants' words, runs afoul of the "fact-specific," case-by-case analysis mandated by *Fogerty*. The defendants' argument has initial plausibility. Most notably, Bridgeport itself concedes in its brief that the district court's decision to import its refusal-to-respond finding in one case to all 14 cases was factually erroneous, noting that "before suit, Appellees wrote to Universal in *seven of the fourteen cases*." (Emphasis added.)

Because one of the recognized grounds for finding an abuse of discretion is the district court's "rel[iance] on erroneous findings of fact," *Nafziger*, 467 F.3d at 522, this concession by Bridgeport would warrant a reversal of the district court's decision unless we determine that the erroneous finding was harmless. The dispositive question, then, is whether the partially erroneous, refusal-to-respond finding in fact constituted the entirety of the district court's *Fogerty* analysis as the defendants claim.

Viewed through this lens, the defendants' argument weakens. The district court certainly referenced the refusal-to-respond finding multiple times—once in support of each of the four *Fogerty* factors that the court discussed. *London Music*, 345 F. Supp. 2d at 843. But in arguing that the court's analysis therefore "did not take into account the numerous other factors," the defendants conflate the *Fogerty* factors with the facts pertinent to an analysis of each of those factors. There is no law, of course, that prohibits a judge from considering the same fact under multiple categories.

The refusal-to-respond finding, moreover, was not the sole fact on which the district court relied in performing its *Fogerty* analysis. Regarding the alleged frivolousness and objective unreasonableness of Bridgeport's claims, for example, the court reiterated its earlier conclusion that "the First Amended Complaint . . . adequately pleaded violations of federal law against the defendants." *London Music*, 345 F. Supp. 2d at 843. Although the defendants correctly noted at oral argument that properly pleading a cause of action does not alone make it objectively reasonable, counsel for Bridgeport responded by pointing out that the district court was also aware that Bridgeport has prevailed in the only two of its cases that have reached trial to date, one of which included a multimillion-dollar punitive-damage award against related defendants. This court,

moreover, has made clear that "because the *Fogerty* factors are nonexclusive, not every factor must weigh in favor of the prevailing party." *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir. 2004).

To be sure, the district court did reference the defendants' refusal to respond to the demand letter from Bridgeport, holding that it "undercut" their "claims regarding the plaintiffs' motivations and unreasonableness." *London Music*, 345 F. Supp. 2d at 843. The defendants attack this portion of the court's analysis by arguing that their "purported failure to respond to a demand letter cannot logically make otherwise unreasonable claims 'objectively reasonable.'" But this argument is contrary to the district court's determination. The court made clear that Bridgeport's claims, in its opinion, were "otherwise" reasonable. This was the background presumption against which the defendants were working—not the other way around.

The district court's analysis of the deterrence and compensation factors is even more telling. Regarding those factors, the court stated that "[t]his refusal [to respond to the plaintiffs' letter] also bolsters the Court's conclusion, discussed above, that the deterrence and compensation factors do not carry the day for the defendants." *Id.* at 843. These words incorporate by reference the district court's multipage, policy-based compensation-and-deterrence analysis set forth earlier in its memorandum opinion. *See id.* at 841-42 (noting, among other things, that "there are other forces at play [beside attorney fees] to minimize if not eliminate" the risk that "rogue plaintiffs might intentionally file frivolous complaints and subject defendants to lengthy litigation"). The court thus explicitly determined that its refusal-to-respond finding "bolster[ed]" its prior analysis without actually substituting for it. Accordingly, the defendants' characterization of the court's *Fogerty*

–11–

analysis as giving "conclusive effect to a single fact" (i.e., the refusal-to-respond finding) is incorrect. To the extent that the district court treated the refusal-to-respond finding as an additional factor unto itself, nothing in *Fogerty* prevents the court from having done so. The list of relevant factors appears in a footnote in *Fogerty*, and, as noted above, the *Fogerty* Court specifically deemed the list to be "nonexclusive." 510 U.S. at 534 n.19.

Nor did the district court commit "a clear error of judgment" in denying the defendants' motion. *See Nafziger*, 467 F.3d at 522. This was a factually complex case that the court deemed "unworkably extensive," *London Music*, 345 F. Supp. 2d at 837, initially involving nearly 800 defendants and a complaint that was almost one-thousand pages in length. Laudably, the district court played a proactive role throughout the course of the ensuing five years of litigation by paring the case down to 477 more manageable parts. Even at this stage of the proceedings—where the parties have submitted 14, multihundred-page joint appendices and unusually long briefs—it remains beyond the ordinary scope of federal cases.

This court's parting words in *Alpha Medical* bear repeating:

> This was a lengthy and complex case with which the district court was closely familiar. Upon careful consideration, the district court concluded that it was appropriate to decline to award costs to Alpha in this case. This conclusion was based upon the context in which the government's voluntary dismissal occurred. Alpha's counter-arguments are insufficient for us to find an abuse of discretion.

102 F. App'x at 10. This is not to say, of course, that a district court can never abuse its discretion where the case is "lengthy and complex." But where, as here, the court employs the proper legal standard and specifically and thoroughly states the reasons for its decision, that decision is entitled to considerable deference. The fact that the very same district judge involved in this appeal has

awarded attorney fees to other defendants in related cases further supports the conclusion that he

employed his discretion soundly in the present case. *See Dimension Films*, 410 F.3d at 807-10

(citing "deterrence" and "the manner in which the plaintiffs litigated this action" as the principal

factors militating in favor of affirming the district court's award of attorney fees to the defendants

in that appeal); *Diamond Time*, 371 F.3d at 894-96 (affirming the district court's award of attorney

fees because it was, among other things, "in the interest of justice and in furtherance of the objectives

of the Copyright Act").

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.