NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0775n.06

Case Nos. 14-3016/3029

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED

Nov 30, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NANCY WOODS; CARLA MCCULLOUGH, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | ON APPEAL FROM THE |
| CAULENE FULLER, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| Plaintiff-Appellee/Cross-Appellant, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| v. | ) | |
| | ) | |
| LINNIE WILLIS; MARGARET MIRACOLA; | ) | |
| CANDACE RENNER, | ) | OPINION |
| | ) | |
| Defendants-Appellants/Cross-Appellees. | ) | |

**BEFORE: GIBBONS, SUTTON, and McKEAGUE; Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge**. This is an appeal and cross-appeal of an award of attorneys' fees in a civil rights action brought by residents of Section 8 housing in Lucas County, Ohio. Out of eight claims brought by each of three plaintiffs against each of three defendants, only one plaintiff (Fuller) succeeded on any claims at all: she won summary judgment and a permanent injunction on two claims against one defendant (Willis). All of the other claims either were dismissed or summary judgment was granted to the defendants. We conclude that Fuller was a prevailing party and therefore eligible for attorneys' fees. However, the district court disregarded this circuit's guidance on the process for calculating an award of attorneys' fees, which constitutes an abuse of discretion. We therefore vacate the award of attorneys' fees and remand to the district court for recalculation.

I.

Plaintiffs Caulene Fuller, Carla McCullough, and Nancy Woods are residents of Lucas County, Ohio, who received federal housing assistance through the U.S. Department of Housing and Urban Development's (HUD's) Housing Choice Voucher Program, pursuant to Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. § 1437f. Under the Housing Choice Voucher Program, "[f]amilies select and rent units that meet program housing quality standards," and the local public housing agency (PHA)—here, the Lucas Metropolitan Housing Authority (LMHA)—determines whether to approve a tenancy and, using HUD funds, "contracts with the owner to make rent subsidy payments on behalf of the family." 24 C.F.R. § 982.1(a)(1)–(2).

In late 2009, on behalf of themselves and a putative class of an estimated 3,500 similarly situated persons, plaintiffs filed a complaint against, in their official and personal capacities, Linnie Willis, executive director of LMHA; Margaret Miracola, director of LMHA's Housing Choice Voucher Program; and Candace Renner, a hearing officer for LMHA. Plaintiffs alleged that defendants were using "termination notice procedures and hearing procedures that violate the Plaintiffs' right to due process under the Fourteenth Amendment and rights under the federal statute governing federal housing assistance programs," thereby "depriv[ing] Plaintiffs of their right to continued rental subsidies through the Section 8 Program." First Am. Compl. 2, ECF No. 12.

Of particular relevance to this appeal are the following allegations: In August 2009, LMHA notified Fuller that her eligibility for the Housing Choice Voucher Program would be terminated effective October 1, 2009 for "FRAUD, IN STATING THAT YOU HAVE CUSTODY OF [D.W.]," Fuller's son. First Am. Compl. 12, ECF No. 12. Fuller requested an informal hearing, which took place on September 10, 2009, and was presided over by Renner; no other LMHA representatives were present. Renner presented evidence including a letter written

by Jason Watts, D.W.'s father, which purportedly alleged that Fuller told people that she had custody of D.W. Renner did not give Fuller an opportunity to examine the letter or the other documents presented at the hearing. Fuller denied making any statements that she had custody of D.W. and introduced corroborating testimony from her aunt, who was also present at the hearing. On September 21, 2009, LMHA issued its hearing decision, stating that "you may remain on the program with the removal of [D.W.], until such time as you are granted legal custody." First Am. Compl. 13, ECF No. 12.

On October 26, 2009, Fuller moved for a preliminary injunction to prevent the defendants from taking any further action to terminate her participation in the Housing Choice Voucher Program, including conducting further hearings. On December 4, 2009, the court entered a stipulated agreement between LMHA and Fuller under which LMHA pledged to take no further action to terminate Fuller from the Housing Choice Voucher Program "for any issue related to [Fuller's] representations concerning the presence of her son, D.W., in her household." Stipulated Agreement 1–2, ECF No. 14. Fuller voluntarily withdrew her motion for preliminary injunctive relief.

Along with Woods and McCullough, Fuller proceeded with eight constitutional and statutory claims. Plaintiffs' first through fourth claims alleged that defendants were violating the Due Process Clause of the Fourteenth Amendment, while the fifth through eighth claims alleged that defendants were violating 42 U.S.C. §§ 1437d and 1437f, and 24 C.F.R. § 982.555. For each claim the plaintiffs requested injunctive and declaratory relief, and the named plaintiffs demanded damages in an amount to be determined at trial. The putative class of 3,500 plaintiffs was never certified.

Defendants filed a motion to dismiss, which the district court granted in part and denied in part in September 2010. The court found that McCullough lacked standing and dismissed all of her claims. As to the remaining plaintiffs, Fuller and Woods, the court dismissed claims 1, 5, and 8 in their entirety, and claim 3 in part. The court also dismissed all claims brought against Miracola and Renner in their official capacities. Furthermore, the court found that Renner, as a hearing officer, was entitled to quasi-judicial immunity from damages.

Following discovery, the parties filed cross-motions for summary judgment. Finding that Fuller's right to due process had been violated when she was denied the opportunity to confront and cross-examine D.W.'s father, the court granted summary judgment in favor of Fuller as to claims 2 and 7.[1] On all of the other remaining claims, however—claims 3, 4, and 6 brought by Fuller, and claims 2, 3, 4, 6, and 7 brought by Woods—the court granted summary judgment to defendants. Fuller waived her demand for damages on the portion of her complaint on which she prevailed. The district court then entered a final order permanently enjoining Willis, her successors at LMHA, and those acting on her behalf at LMHA from violating Fuller's due process rights in the manner in which the court had found Fuller's rights to have been violated.

Both sides appealed, and this court affirmed the district court's orders in their entirety. *Woods v. Willis*, 515 F. App'x 471, 473 (6th Cir. 2013).

Pursuant to 42 U.S.C. § 1988, Fuller then moved for $213,909.40 in attorneys' fees and $2,248.60 in costs.[2] The district court agreed with Fuller that she was a prevailing party in a § 1983 suit and was therefore entitled to an award of reasonable attorneys' fees and costs under § 1988. The court decided, however, that the only fees and costs to which Fuller's counsel were

---

[1] These claims both alleged that the defendants failed to provide program participants an opportunity to confront and cross-examine witnesses.

[2] Fuller's request for attorneys' fees included $147,536.90 for Advocates for Basic Legal Equality (ABLE), who claimed 686.4 hours, and $66,372.50 for Relman Dane & Colfax PLLC (Relman Dane), who claimed 160.2 hours.

entitled were "those which relate directly to the sole and narrow issue on which plaintiff prevailed," and the court therefore ordered Fuller's counsel to submit a revised statement of fees and costs. *Woods v. Willis*, 981 F. Supp. 2d 700, 703 (N.D. Ohio 2013).

In the revised statement, Fuller's counsel requested $81,861.84 in attorneys' fees and $1,124.50 in costs.[3] Still unsatisfied, the district court declined to award Fuller's counsel the full amount requested. The court concluded that a reasonable amount of attorneys' time spent on the case would have been 134 hours and that reasonable rates would be $220 per hour for ABLE and $400 per hour for Relman Dane. The court accepted the allocation of two-thirds of the time to ABLE and one-third to Relman Dane. From there, the district court calculated fees of $19,580.00 for ABLE and $18,000.00 for Relman Dane, yielding a total award—after adding the requested costs of $1,124.50—of $38,704.50.

Willis timely appealed, arguing that Fuller was not entitled to any attorneys' fees because she was not the prevailing party, and that the district court had abused its discretion by improperly failing to require Fuller's counsel to fulfill all elements of their burden of proof in requesting fees and costs. Fuller cross-appealed, arguing that the district court abused its discretion by failing to use the lodestar method to determine Fuller's attorneys' fees.

II.

"A district court's determination of prevailing-party status for awards under attorney-fee-shifting statutes—such as 42 U.S.C. § 1988—is a legal question that this court reviews de novo." *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 617–18 (6th Cir. 2013) (alterations omitted) (quoting *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 619 (6th Cir. 2007)).[4] A district

---

[3] The claimed attorneys' fees represented 576.6 hours spent by ABLE and 202.4 hours spent by Relman Dane.

[4] This circuit has changed its position on the proper standard of review for a district court's determination of prevailing-party status. In 2006, a panel of this court stated that "[w]e review a district court's determination of prevailing party status for clear error." *DiLaura v. Township of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006)

court's award of attorneys' fees, however, is a predominantly fact-driven matter that this court reviews for abuse of discretion. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Singleton v. Smith*, 241 F.3d 534, 538 (6th Cir. 2001); *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000)). "A district court abuses its discretion when it 'relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard.'" *Binta B.*, 710 F.3d at 618 (quoting *Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004)).

III.

Although "[t]he general rule in our legal system is that each party must pay its own attorney's fees and expenses," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)), 42 U.S.C. § 1988(b) provides that in certain civil rights actions, including those brought under 42 U.S.C. § 1983, the district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The purpose of this provision is "to ensure that federal rights are adequately enforced." *Perdue*, 559 U.S. at 550.

To be a prevailing party, a plaintiff must have done more than bring a lawsuit that achieved the desired result of catalyzing a voluntary change in the defendant's conduct. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.*, 532 U.S. 598, 601, 605 (2001). Rather, the plaintiff must have "been awarded some relief by the court,"

---

(citing *Knology, Inc. v. Insight Commc'ns Co.*, 460 F.3d 722, 726 (6th Cir. 2006)). *DiLaura* was cited by other cases. *See, e.g.*, *Bronco's Entm't, Ltd. v. Charter Twp. of Van Buren*, 214 F. App'x 572, 575 (6th Cir. 2007). In 2007, however, another panel of this circuit wrote that *de novo* review applies. *Bridgeport Music, Inc. v. London Music, U.K.*, 226 F. App'x 491, 493 (6th Cir. 2007). The *Bridgeport Music* panel cited *Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005), which stated that "[p]ost-*Buckhannon*, [a Supreme Court decision from 2001] every Circuit to address the issue has determined that the characterization of prevailing-party status for awards under fee-shifting statutes . . . is a legal question subject to *de novo* review." The *Bridgeport Music* panel's endorsement of *de novo* review was subsequently cited in *Radvansky*, 496 F.3d at 619. From that point forward, the weight of Sixth Circuit precedent favors *de novo* review for prevailing-party determinations. Either standard produces the same result here.

resulting in the plaintiff receiving a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 603, 605. A plaintiff prevails within the meaning of § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (per curiam) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)); *see also Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."). "[A]n injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Lefemine*, 133 S. Ct. at 11 (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curiam)). So too will a settlement agreement enforced through a consent decree. *Buckhannon*, 532 U.S. at 604. Through the court-sanctioned settlement agreement, Fuller obtained a promise from LMHA not to seek to terminate her from the Housing Choice Voucher Program for any issue relating to her representations about D.W.'s presence in her household. Also, as a result of her success at the summary-judgment stage on claims 2 and 7, Fuller won a *permanent* injunction preventing LMHA from violating her due process rights in the same way it did in 2009—*i.e.*, by relying solely on hearsay evidence in making a decision adverse to Fuller, without allowing her an opportunity to confront and cross-examine the source of the hearsay evidence. Although this relief was specific to Fuller, it is relief nonetheless.

Willis contends that Fuller cannot be considered a prevailing party because "defendants . . . prevailed on most of the claims by far." R. at 31, Corrected First Br. 17. In determining whether a plaintiff is a prevailing party, however, courts do not look to the number of claims on which the plaintiff succeeded, the magnitude of the relief obtained, or whether the

plaintiff obtained the primary relief sought; the question is simply whether the plaintiff has won on at least one claim. *Binta B.*, 710 F.3d at 620 (citing *Farrar*, 506 U.S. at 114; *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010)); *see also Tex. State Teachers Ass'n*, 489 U.S. at 790 ("[T]he *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.")  This court has found, for example, that a plaintiff was a prevailing party even where twelve of his fourteen claims were dismissed. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001).  Here, Fuller obtained relief on two out of eight claims overall, one of which was a § 1983 claim.

Though the fact that Fuller succeeded on only a fraction of her claims is not, in itself, enough to preclude her from recovering attorneys' fees, we must also determine whether Fuller obtained merely a *de minimis* or purely "technical victory [that] may be so insignificant . . . as to be insufficient to support prevailing party status." *Tex. State Teachers Ass'n*, 489 U.S. at 792. The district court described the hearing officer's actions as plainly unconstitutional, but also "isolated, idiosyncratic, unintentional, and aberrational." *Woods v. Willis*, 986 F. Supp. 2d 900, 901 (N.D. Ohio 2013).  It went so far as to observe that "[t]here was nothing systemic about" the officer's actions, which were simply a mistake that "did not require prospective injunctive relief to remedy." *Id.* Willis cites these remarks and contends that as a practical matter, Fuller had already obtained relief through the court-sanctioned agreement between her and LMHA.  The injunction, Willis insists, did nothing else to materially alter the legal relationship between the parties, and Fuller therefore cannot be considered to have prevailed.  We disagree.  The relief that Fuller obtained through the court-sanctioned agreement was outcome-oriented: she received a promise that LMHA would not take any further action to remove her from the Housing Choice

Voucher Program based on her representations about her son. But the relief that Fuller obtained through the permanent injunction was process-oriented: the court ordered LMHA never to use against Fuller the unconstitutional hearing procedures that it had previously used against her. The permanent injunction was not limited to the factual circumstances of the due process violations committed by the defendants. Instead, it extended to the manner in which those violations had been committed, including any potential hearings that LMHA might conduct in the future relating to any other issue that might come up between LMHA and Fuller. Fuller thus obtained a judicially-sanctioned, material alteration in the legal relationship between the parties. *See Lefemine*, 133 S. Ct. at 11. Hence, the district court did not err in finding that she was a prevailing party.

IV.

Discontent with the district court's order, Fuller and Willis both attack the amount of the attorneys' fees award, but from different directions. Fuller argues that the district court abused its discretion by failing to conduct the lodestar analysis. Willis argues primarily that the district court abused its discretion by failing to require Fuller's attorneys to meet their initial burden of proof to show the number of hours expended. Both arguments have merit.

A.

Under Sixth Circuit precedent, the party requesting attorneys' fees "bears the burden of proof on the number of hours expended." *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) (citing *Hensley*, 461 U.S. at 433). "We have explained that '[in] obtaining the number of hours expended on the case, the district court must conclude that the party seeking the award has sufficiently documented its claim.'" *Imwalle*, 515 F.3d at 552 (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)). The district court's

own statements indicate that it did not require Fuller to meet this burden. The district court suggested that it "could find . . . without fear or risk of reversal" that Fuller's attorneys had not carried their initial burden of proof in establishing the number of hours reasonably spent working on the successful claim. *Woods*, 986 F. Supp. 2d at 902. The court stated that "in all . . . material respects," the revised fee petition "fails to establish the reasonableness of the hours expended." *Id.* at 904. Nevertheless, the court awarded attorneys' fees. We agree with Willis that, in doing so, the court improperly applied the law and therefore abused its discretion.

B.

There is another problem with the district court's award. "When making a determination of a reasonable attorney fee, a district court begins by determining 'the fee applicant's "lodestar," which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). Here, the court determined that an hourly rate of $220 was reasonable for the attorneys from ABLE and a rate of $400 per hour was reasonable for the attorneys from Relman Dane; neither party contests these determinations on appeal. What is in dispute is the court's determination of the proven number of hours reasonably spent by Fuller's attorneys. Once the party requesting fees carries its initial burden of proof on the number of hours expended, the district court should review the hours claimed by the attorneys and then "should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why." *Sierra Club v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 504 F.3d 634, 645 (6th Cir. 2007) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997)). Failure to do so "requires us to remand the case for further consideration." *Id.* (citation omitted). Here, the

court failed to go through the attorneys' application in detail and state with some particularity which hours it was accepting and rejecting. Instead, the court listed eight different categories of work—items such as "Initial legal research and preparation of complaint" and "Preparation for and conducting discovery"—and, for each one, stated, in conclusory fashion, the number of hours that the court believed "a reasonable, efficient, and cost-conscious attorney would have expended." *Woods*, 986 F. Supp. 2d at 903. Fuller complains that the court "cast aside the extensive billing records" and "produced an award unmoored from" the analytical process required under circuit precedent. R. at 38, Fourth Br. 9. We agree and therefore conclude that the district court abused its discretion.

V.

For the reasons explained above, we vacate the district court's order granting attorneys' fees to Fuller and remand for recalculation of the award.